# Patterson *versus* Delaware County.

1. Patterson's property was returned by the assessor as "square of ground, factory and *machinery,*" the whole assessed as real estate, and a tax levied on the valuation for county purposes. *Held,* that under the Act of April 29th 1844, ? 32, the machinery was properly taxed as real estate.

2. Act of April 29th 1844, ? 32, construed, per Butler, P. J.

| 70 | 381 |
|---|---|
| 160 | 307 |
| 70 | 381 |
| 26 SC | 43 |
| e 26 SC | 46 |

January 18th 1872. Before Thompson, C. J., Agnew and Sharswood, JJ. Williams, J., at Nisi Prius.

Error to the Court of Common Pleas of *Delaware county:* Of July Term 1871. No. 101.

This was an amicable action and case stated, commenced December 2d 1870, between Robert Patterson plaintiff, and the County of Delaware defendant.

The case stated the following facts:—

"The plaintiff is the owner in fee of a certain lot of land in the city of Chester, in the county of Delaware, situate, &c., upon which is erected a cotton factory. The plaintiff owns and occupies said mill, and owns the machinery therein which is necessary for the purposes of his business in running said mill. The commissioners of

the county of Delaware previously to the last triennial assessment in issuing their instructions to the several assessors in the county, embraced in said instructions the following order, viz. :—'You will also take an account of the machinery in all woollen and cotton manufactories within your township as real estate when owned by the proprietor or owner of the building in which such machinery is located, and when owned by a tenant you will return the same for school purposes alone.' Under these instructions the said property of the plaintiff was returned as follows : 'Square of ground, factory and machinery,' and the whole assessed as real estate at the sum of $33,000.

" The commissioners levied a tax for county purposes on the said total assessment, of three and one-half mills to the dollar, amounting to $115.50. Under a warrant issued by the commissioners, the collector of county tax for the year 1870 demanded of the plaintiff the whole amount of the tax, viz., the sum of $115.50. Payment of that part of the said sum of $115.50 which the plaintiff supposed would be the proper proportion of the machinery included in the said total assessment, was refused by the plaintiff. Thereupon the said collector made a distress on the personal property of the plaintiff, to wit,—certain bales of goods, and was about to advertise and sell the same for the payment of the said tax. His property being thus under distress the plaintiff paid the said tax, under protest, of which protest he notified the collector at the time of payment.

" It is submitted for the opinion of the court, whether the said machinery of the plaintiff was properly taxable for county purposes as a part of the said mill and real estate, and whether it should have been included in the said total assessment as aforesaid with the said land and factory. And if the said tax was improperly and unlawfully assessed, and levied by reason of the machinery being included in the assessment, then judgment shall be entered for the plaintiff; but if the court should be of opinion that said tax was not unlawfully and improperly assessed and levied, then judgment to be entered for the defendant."

The court entered judgment for the defendant, Butler, P. J., delivering the following opinion :—

" It is reasonably plain, we think, that the legislature intended to tax all real estate within its jurisdiction, except such as is expressly exempted.

" The 32d section of the Act of 1844 provides that : ' All real estate, to wit, houses, lots of grounds, ground-rents, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar-houses, malt-houses, breweries, vineyards, fisheries, ferries, wharves, *and all other real estate not exempt by law from taxation*, shall be valued and assessed for all state and county purposes.' Language more comprehensive could not have been

[Patterson *v.* Delaware County.]

employed. After designating real estate in general terms, an attempt is made to enumerate the several descriptions or kinds, apparently for greater certainty'; and then, as if fearful of having overlooked and omitted something that belongs to the class, general terms are again resorted to, that nothing may escape.

" And this act, it will be observed, differs in this respect from that of 1834—the latter closing with the enumeration of certain kinds of real estate; and the enumeration, also, falling short of that contained in the Act of 1844. And this difference is significant. The legislature evidently intended by the subsequent act to embrace all real estate of *every description.*

" That the property taxed in the case before us is *real estate* is not, of course, doubted. But the plaintiff thinks *this particular kind* of real estate was *not intended* to be taxed. He argues that the enumeration of certain kinds in the act, as ' houses, lands, lots of ground, ground-rents, mills,' &c., was to designate precisely what the legislature intended by the preceding terms ' all real estate,'and that everything not embraced in this enumeration is excluded. But this view seems to overlook the very important language, before referred to, which follows the enumeration : ' all *other* real estate.'

" But suppose we adopt the plaintiff's view—that the operation of the Act of 1844 is to be confined to the several descriptions of real estate enumerated; what then ? Does not the property here taxed fall within the enumeration? The machinery in a mill is as much a part of it as are the *walls.* As the Supreme Court has said in Gray *v.* Holdship, 17 S. & R. 413 : ' the machinery, the wheels, stones, and even the bolting-cloths, are a part of the mill,' and *therefore* a part of the real estate.

" The plaintiff admits this; but says the legislature did not use the term ' mill' in this sense; that while such is the legal signification of the term, the popular meaning is otherwise; and that the legislature must be regarded as adopting the latter. But *is* the popular meaning otherwise ? When a man, of common intelligence and business experience, speaks of ' Mr. Patterson's Mill,' what does he mean ? The establishment in its completed condition—fitted for its proper use ? Or the bare walls ? (For there is no intermediate point; all between, from the engines to the spindles, is *machinery.*) He could hardly mean the latter; for the walls do not constitute a *mill,* and bear no more resemblance to it, than to a barn.

" To justify a departure from the legal signification of the term employed in the act, it should, at least, appear very distinctly that it has a different popular signification. In our judgment it does not so appear. And we need not, therefore, determine what would be the proper rule of construction if it did.

" Under the Mechanics' Lien laws a question arose very similar

to the one we are considering. The original act authorizing such liens, confined them to claims for work done and materials furnished about the erection of any ' *house* or other *building*.' It was, therefore, contended that the engine in a saw-mill, the copper kettles and boiler in a brew-house, and the machinery in a manufactory, are not a part of the '*building*'—not so understood in common parlance—(and with greater reason, we think, than it is now contended that the machinery of a mill is not a part of a mill), and, therefore, that no lien could be filed by those who furnished these things, or did work upon them. But the Supreme Court decided otherwise; holding that everything necessary to perfect the establishment (mill, manufactory, &c.), and fit it for the uses designed, *is a part of it*, and falls, therefore, within the term ' building;' Gray *v.* Holdship, 17 S. & R. 413; Wademan *v.* Thorp, 5 Watts 115; Morgan *v.* Arthurs & Co., 3 Watts 140.

" But it is urged that such a construction of the statute before us would produce *inequality ;* that machinery would be taxed in one man's hands and not in another's, and that, therefore, the legislature cannot have intended it. Many of our tax laws, however, operate unequally; and it is difficult, if not impossible, to avoid it. As the Supreme Court has said in Philada. Saving Fund *v.* Yard, 9 Barr 359, some property is twice taxed—as in cases of ground-rents (the ground and also the rent issuing out of it being taxed); and land purchased on credit (the land and the money borrowed, or mortgage given, to pay for it, both being assessed). One man owning $50,000 invests it *on* real estate, at interest, and pays no tax; another owning but $1000, invests it *in* real estate, and *he* is taxed. Two men invest their means in lumber; as such it is not taxable. But one of them annexes his to his freehold—and it matters not how; he need not change its form, bore a hole or drive a nail—and immediately it becomes real estate, and liable to taxation: while the other may employ his about his business, hire it, *erect it into buildings* as a tenant, or use it in any way he sees fit (so that he do not annex it to his freehold), and it will remain personal, and exempt. And these latter instances are very similar to the case before us. While the property —the money and lumber—retains its original character it is exempt; when converted into real estate it is taxed. And while the plaintiff's machinery retained its original character of personalty it was exempt; when annexed to the freehold, and thus converted into real estate, it is taxed. It might have gone into the mill as the property of a tenant; of one from whom it was hired; or of the owner of the mill, for some temporary purpose; and it would have remained personalty and exempt. But when placed there by the owner of the mill for the common purposes of the establishment and with a view to permanency, it at once became real estate; its individuality and distinctive character were

lost. Under every species of conveyance it will pass as a part of the mill. And the owner can with no more reason complain of the increase of his assessment on this account, than he could have done of the increase which occurred when he put his money into the land on which the building stands, or his lumber into the building itself.

"As further evidence that the legislature did not intend such a construction, we are pointed to the special Act of 1850, directing machinery to be assessed in Delaware county for school purposes; which act it is said was unnecessary if machinery was before taxed as real estate. We do not think there is much in this. It matters very little how the legislature of 1850 understood the Act of 1844. The Digest contains ample proof that the legislature not unfrequently acts in ignorance of the existing law. And we all know how much consideration is given to *special* acts, such as that of 1850. As it is said by the Governor in his last message: 'Special bills are usually drawn by the member having them in charge, or by some one interested. By what is called courtesy it is considered a breach of etiquette for any other member to interfere with such bills. The result is that they are passed as originally prepared without examination,' either as to the necessity or propriety of the legislation proposed. Still there was something for the Act of 1850 to operate upon without adopting the plaintiff's view of that of 1844. There is machinery in Delaware county, and doubtless a large amount, in the possession of *tenants* and others, not taxable as real estate. And it is quite probable that it was such machinery that the Act of 1850 was intended to cover. Its terms are general, but they cannot properly be regarded as embracing machinery which has lost its distinctive character by being converted into real estate.

"What would be the result of adopting the plaintiff's position? If what he denominates *machinery* is to be cast out in the assessment of mills, what is to be included? Simply the bare walls? That would hardly be claimed. But where else could we draw the line? According to the old rule by which it was sought to distinguish between real and personal property—*physical annexation?* That has been found *impracticable*, no rule at all, and has, therefore, long since been abandoned. Ch. J. Gibson, in Voorhis v. Freeman, 2 W. & S. 116, says: 'The criterion of physical annexation is so limited in its range and so productive of contradictions, even in regard to fixtures in dwelling-houses, to which it was adopted before England had become a manufacturing country, that it will answer for nothing else. The courts will be drawn away from it by its narrowness and want of adaptation to the business and improvements of the age. From the force of habit they have adhered to it after it has ceased to be a guide; for nothing but a passive regard for old notions could have led them to treat machinery

20 P. F. SMITH—25

[Patterson *v.* Delaware County.]

as personal property when it was palpably an integrant part of a manufactory or mill, merely because it might be unscrewed or unstrapped, taken to pieces and removed, without injury to the building.   It would be difficult to point out any kind of machinery, however complete in its character, or by what means held in its place, which might not with care and trouble be taken to pieces and removed in the same way ; and the greater or less facility with which it might be done would be too vague a thing to serve as a test.   It would allow the stones, hoppers, meal-chests, and running gear of a grist-mill, and the hammers and bellows of a forge, and parts of other buildings used for manufacturing purposes, to be put into the class of personal property.   If physical annexation is the criterion the *slightest tack or ligament* should constitute it, else if we get away from it ever so little, we shall have no criterion at all.   There are so many fashions, methods and means of it, and so many degrees of connection between material substances that there is nothing about which men would more readily disagree than whether a thing held by a band or cleat was permanently annexed.'   And thus was the rule of *physical annexation* (as is said in Meigs's Appeal, 12 P. F. Smith 28) exploded and abandoned.

" Now did the legislature intend that the assessors should go back and attempt an application of this abandoned rule, which the courts had found to be, and had pronounced, impossible of application ? We presume not.   And if not (and the machinery is to be *excluded*, as the plaintiff urges), it must have intended that the assessors should confine themselves to the bare walls.   There is no middle ground ; for, as already observed, from the engines and wheels up to the smallest necessary article, all must be pronounced machinery, if any part is.   There is no other place—no point between the walls and the complete equipped mill (as painful experience has demonstrated), at which a line *can* be drawn designating where the *mill ends* and the *machinery commences*.

" That the assessors were not intended to stop at the walls is clear.   And that there is no point between the walls and the completed establishment at which they *can* stop is to us equally clear.

" We cannot, therefore, adopt the views of the able counsel who represent the plaintiff, whether we consider the general terms used in the act, or the special terms on which they rely."

The plaintiff took out a writ of error, alleging the entering of the judgment for error.

*J. B. Hinkson* and *C. Guillou,* for plaintiff in error, referred to Act April 29th 1844, § 32, Pamph. L. 497, 2 Br. Purd. 1380, pl. 147.   Tax laws are to be construed strictly and not held to include anything not usually designated by them : Spangler *v.* York Co., 1 Harris 326 ; Deitz *v.* Beard, 2 Watts 172.   Specific

[Patterson v. Delaware County.]

subjects being enumerated, general expressions are weakened: Sharpless v. Philadelphia, 9 Harris 147. Machinery put into a mill by a lessee is personalty: Lemaa v. Miles, 4 Watts 330; Hill v. Sewald, 3 P. F. Smith 271. It may be converted into personalty by agreement between the owner and his vendee: Harlan v. Harlan, 8 Harris 303.

*G. E. Darlington* and *W. Darlington*, for defendant in error, were stopped by the court.

Judgment was entered, February 19th 1872.

PER CURIAM.—No elaboration is necessary to prove that the learned judge below was right in his conclusions in this case. We affirm the judgment, therefore, for the reasons so well given by him on the point in controversy.