# Jermyn, Appellant, *v.* Scranton City.

*Municipalities—Bonds—Cities of the second class—Acts of June* 14, 1887, *P. L.* 395, *sec.* 24, *Feb.* 13, 1895, *P. L.* 13, *and March* 7, 1901, *P. L.* 20— *Statutes—Repeal.*

The twenty-fourth section of the Act of June 14, 1887, P. L. 395, as amended by the Act of February 13, 1895, P. L. 13, relating to the increase of bonded indebtedness of cities of the second class and an election thereon, is repealed by the Act of March 7, 1901, P. L. 20.

Where an ordinance of a city of the second class providing for an issue of bonds, contains a sufficient levy for the payment of the bonds and interest, the issue of the bonds will not be restrained because no provision was made to pay the first semiannual installment of interest. Such payment may be made in other ways by the city, or be made out of the premium bid on the sale of the bonds.

Under the Act of March 7, 1901, P. L. 20, as amended by the Act of June 20, 1901, P. L. 586, relating to the issue of bonds by cities of the second class, bonds to provide means for contemplated improvements, or for the creation of a new indebtedness are payable annually, but funding bonds are payable in five to thirty years.

*Taxation—Uniformity—Classification—Cities of the second class.*

Cities of the second class may, for purposes of taxation, classify real estate into three classes, and levy a different rate for each of the three classes.

Argued May 22, 1905.   Appeal, No. 146, Jan. T., 1905, by plaintiffs, from decree of C. P. Lackawanna Co., Sept. T., 1905, No. 18, dismissing bill in equity in case of Joseph J. Jermyn et al. v. City of Scranton and Alexander T. Connell, Mayor, and Martin T. Lavelle, city clerk.   Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ.   Affirmed.

Bill in equity restraining issue of bonds.

EDWARDS, P. J., filed the following opinion:

The city of Scranton on August 10, 1904, passed two ordinances, one authorizing the issue of bonds in the sum of $38,000 for the purpose of paying the amount assessed against the city for the construction of certain sewers, and the other authorizing the issue of bonds in the sum of $100,000 to provide for the construction of a building to be used as police and fire headquarters and for other purposes designated in the ordinance.

Both ordinances provide for the creation of a sinking fund for the redemption of the bonds as required by law. Thereupon, the city proceeded to print the bonds and to advertise for bids for the purchase of the same.

The plaintiffs, claiming that the said bond issues were not authorized under the law, filed their bill of complaint in the present case, and they now pray for an injunction to restrain the city authorities from executing and delivering the bonds specified in the ordinances aforementioned.

There are no facts in dispute. Counsel on both sides agree that the case shall be heard and finally disposed of on bill and answer, the only questions raised being matters of law.

The said issues of bonds are attacked on four grounds, which, in brief, are as follows :

1. They are contrary to the provisions of. the first section of the Act of February 13, 1895, P. L. 13, providing that there shall be no increase in the interest-bearing indebtedness of a city of the second class without a vote of. the electors.

2. The ordinances authorizing the issue of the bonds do not provide for the semiannual interest falling due January 1, 1905.

3. The provisions in said ordinance levying three different rates on the three several classifications of real estate as returned by the city assessors are in conflict with sections 1 and 10, article IX, of the constitution.

4. The bond issues offend against the provisions of paragraph 6, in section 3, article XIX of the Act of March 7, 1901, P. L. 20, as amended by the Act of June 20, 1901, P. L. 586.

The foregoing grounds of attack are not in the exact order in which they are found in plaintiffs' bill, but they are given by me in the order in which I intend to discuss them.

1. The Act of Feb. 13, 1895, section 1, P. L. 13.

Section 1 of this act of assembly amends section 24 of the Act of June 14, 1887, P. L. 395. The latter section is as follows : " Any increase of interest-bearing bonded indebtedness of cities of the second class is hereby prohibited, unless the same shall be approved by an affirmative vote of the majority of the qualified electors voting thereat at an election provided for by ordinance of councils."

The legislature of 1895, having unusual regard for correct

grammatical expression, by amendment changed one word in the section quoted, using "thereon" instead of "thereat." This was the only change made by the amendment. The change was unnecessary, because no court, in construing this section, would permit the error of using one word instead of the other to defeat the plain meaning of the legislative enactment. The fourth section of the schedule contained in the Act of March 7, 1901, P. L. 20, specifically repeals the whole of the act of 1887, excepting sections 1 and 2, thus wiping out section 24 above quoted. Counsel for plaintiffs argues that the act of 1895 (section 1) is still in force, and that, therefore, no city of the second class can increase its bonded indebtedness in any amount without a vote of the people. We can hardly think that counsel is serious in maintaining this contention. It appears very clear that the only effect of the amendment in the act of 1895, section 1, was to read into the twenty-fourth section of the act of 1887 the word "thereon," instead of "thereat." In this particular instance the latter section falls with the repeal of the former. We also call attention to paragraph 5, section 3, article 19, of the act of 1901, relating to the corporate powers of cities of the second class. The paragraph reads thus :

." To borrow money on the credit of the city, and to pledge the credit and revenues thereof for the payment of the same, to an amount not exceeding two per centum upon the assessed value of the taxable property in said city, and with the consent of the people of the said city, obtained at an election held under the provisions of the constitution and the general laws of this commonwealth, to increase the indebtedness of such city to an amount not exceeding in the aggregate, seven per centum upon the assessed valuation of the taxable property therein."

In view of the power expressly given by this paragraph to cities of the second class to pledge the credit of the city up to two per cent of the assessed valuation without a vote of the people, what becomes of section 1 of the act of 1895 ? Both provisions cannot stand. They are absolutely irreconcilable. One or the other must give way, and, according to a well understood rule of construction, the latter enactment must prevail. We need not enlarge on this point.

2. The payment of the interest falling due January 1, 1905.

It is claimed that there is no provision for the payment of the interest which falls due on January 1, 1905; sec. 8, of the ordinance, levies a tax for the year 1905 and every year thereafter to pay the bonds and interest. Counsel for plaintiffs says that the taxes, as a matter of fact, are not collected until late in the year, and that there will be no money in the treasury to pay the first semiannual installment of interest. This is undoubtedly true; but it is equally true that the city has many lawful ways for providing money for temporary purposes. The main question is: Has the city done what the law requires it to do in making provisions for the payment of the bonds and interest? Has it made a levy sufficient for the purpose? The eighth section of the ordinance answers these questions affirmatively. The ordinance has been carefully drawn and meets the requirements of the law in such cases, but the city is not so helpless in this matter as counsel would have us believe. The interest even for the whole of the year 1905 may be paid out of the premium bid on the sale of the bonds. We know of no reason why this cannot be done. The amendment to the answer filed by agreement shows that the total premiums exceed one year's interest. Regardless of the particular source from which the city may draw the money to pay the first semiannual interest, it is a sufficient answer to plaintiffs' contention on this point that the city has made all the provisions demanded by law for the payment of all the bonds and interest. It could do no more. We consider this objection as highly technical.

3. Want of uniformity in the rate of levy.

This objection is of a more substantial character than those we have already discussed. The constitution provides that all taxes shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax. Counsel for plaintiffs admits the right of the legislature to classify real estate for purposes of taxation, but denies the right of a municipality to levy a different rate on each class of property. In other words, he admits the principle, but denies the propriety of applying it so as to produce practical results. Unless there is a different rate of levy on the several classes of property, why should properties be classified at all? The point of objection, as we understand it, is that one man pays more than

another on the same valuation. In the present case, for instance, the ordinance levies .142 on each dollar of valuation on first class property, .0946 on second-class property, and .071 on third-class property. All properties in cities of the second class being assessed at their actual value, the result is, that three men, each owning property worth, say, $5,000, the properties being in each of the several classes, do not pay the same amount of tax on the same valuation. This is undoubtedly true, and such is the result of the practical operation of the rule ; but unless some such result is secured, it is apparent that the classification of real estate for purposes of taxation is useless. If all properties are assessed at their actual value, and if the same rate should be levied on all properties, why not include all properties in the one class ? It is too late in the day in Pennsylvania to question the power of the legislature to classify subjects of taxation on broad lines and within certain limitations. The reasons for such classification, based upon imperious necessity, are so numerous, and have been so frequently discussed by the higher courts, that it is useless to refer to them now. We shall cite only one case to show that the question before us is definitely and authoritatively settled: Commonwealth v. Delaware Div. Canal Co., 123 Pa. 594.

It is decided that the power to impose taxes for the support of the government, with the power of classification, still belonging to the legislature under the new constitution, the selection of the subjects thereof, their classification, and the methods of collection to be provided, are matters purely legislative. The power to classify being given all that is then required by the constitution is that taxes shall be uniform upon the members of a class, and it is the uniformity of taxation, according to the classification made, which is the matter to be determined by the court.

The Act of 1901, as amended in the same year (see P. L. 586, on page 594) has the following provision : " To provide for the issuing of bonds ; for the application of bonds already issued, for the purpose of funding any and all indebtedness, now existing or hereafter created, of the city, now due or to become due : Provided that the said bonds shall be payable in not less than five years and not more than thirty years from

the date of their issue, and that the same shall bear interest at a rate not exceeding six per centum per annum, with interest coupons attached, payable annually or semiannually, and the said bonds shall not be sold or exchanged for less than their par value and accrued interest."

This provision, undoubtedly, refers to funding bonds or bonds issued to take up or pay an existing indebtedness. The phrase "indebtedness hereafter created" must be taken to mean that such indebtedness if funded by the issue of bonds, is in the same class, and all such bonds should be payable in not less than five nor more than thirty years.

It is conceded that the bonds in question in the present case are not funding bonds. They are issued for the purpose of providing money for improvements yet to be made. We hold, therefore, that the provision above quoted does not authorize the issuing of bonds payable annually. Where, then, do we find the authority for the issuing of bonds payable annually? The only place it can be found is in article XI, act of 1901, on page 31, relating to the "Sinking Fund Commission," which states that whenever any new bonds shall be issued by any of said cities they shall be made payable in annual installments equal to the tax levied therefor, and shall be made payable annually from the funds so provided. It is difficult to escape the effect of the comprehensive and general character of this provision relating to the issue of "any new bonds." Counsel for plaintiffs claims that the place of this provision in the article pertaining to the sinking fund commission means that the "new bonds" referred to are those bonds issued by the city to take up maturing bonds. We do not know what might have been in the mind of the person who drafted article XI, but we do know that we must give effect to the language used. The language is so plain and unambiguous that we cannot change it by any method of interpretation. We think the criticism is proper that the provision belongs logically to some other part of the act of 1901, but we must take this act of assembly as we find it, and give it such a construction that the whole may stand if possible. If it was the intention of the legislature to say that any new bonds issued by cities of the second class shall be payable annually when issued for the purpose of taking up or funding maturing bonds,

it should have said so.　We have scanned every word and line of article XI, and can find no such intention expressed.　Combining the two provisions in the act of 1901, in relation to the issue of bonds, we read them thus : " Whenever any new bonds shall be issued by any of said cities they shall be made payable in annual installments," but, " bonds issued for the purpose of funding any and all indebtedness now existing or hereafter created . . . . shall be payable in not less than five years nor more than thirty years."　This, in our opinion, is the present state of legislation relating to the issue of bonds by cities of the second class.　Bonds to provide means for contemplated improvements or for the creation of a new indebtedness are payable annually ; funding bonds are payable in from five to thirty years.

It is conceded in this case that the ordinance was regularly adopted.

Now, October 31, 1904, this case having been heard on bill and answer, and having been argued by counsel, it is adjudged and decreed that the plaintiffs' bill be dismissed at their cost.

*Error assigned* was decree dismissing the bill.

*G. M. Watson,* for appellant.

*David J. Davis,* city solicitor, for appellees, was not heard.

PER CURIAM, June 22, 1905 :

Decree affirmed on the opinion of the court below.　Costs to be paid by appellant.