**Taxes Levied on Property of Haws Refractories**

*Francis J. Leahey*, for petitioners.

*Lawrence W. Davis*, for taxpayer.

*Edward G. Kuyat, Jr.* and *Richard J. Green, Jr.*, contra.

O'KICKI, J., July 23, 1974.—This matter comes before the court as a result of the petition filed by

Joseph P. Roberts, Joseph G. Gorman and Raymond P. Johnson, in their capacities as duly elected Commissioners of Cambria County. By virtue of the prayers in the petition, they seek a compromise of real estate taxes levied against the properties of Haws Refractories Company for the years 1968 through 1972, inclusive, in the amount of $38,511.18. The county commissioners petitioned the court for approval of the acceptance of $1 in full compromise of subject delinquent taxes. The authority for the presentation of this petition is the Act of November 23, 1938, (Sp. Sess.), P. L. 90, sec. 1, 72 PS §5551:

"Whenever taxes levied by any political subdivision upon real property have become delinquent and have been returned to the county commissioners, or have been entered as liens in the office of the prothonotary of any county in the Commonwealth and such delinquent taxes and the penalties, interest and costs due thereon exceed, in the opinion of the tax levying authorities, the net amount which could be realized at a tax sale of such real property upon which the taxes have been levied, and, in the opinion of said authorities, is more than could be realized by enforced collection against the owner of such property, it shall be lawful for the tax levying authorities, or any of them, if the court of common pleas of the county, in which such real property is situated, shall first have consented thereto, to accept in compromise of such delinquent taxes, penalties, interest and costs any sum less than the whole amount due, and to enter satisfaction of all such taxes on the record."

The land and buildings in question are located in West Taylor Township (3.3 acres, property no. 67-01-113, having a market value of $115,940 and an assessed value of $40,580); in the Twentieth Ward of the City of Johnstown (0.8 acres, property no. 90-34-

101.1, having a market value of $40,600 and an assessed value of $14,210); and in the Twenty-first Ward of the City of Johnstown (2.25 acres, property no. 91-06-200, having a market value of $51,200 and an assessed value of $17,930).

Cambria County is a fourth class county and in assessing taxable real estate within its territorial limits is governed by the Act of May 21, 1943, P. L. 571, as amended, 72 PS §5453.101, et seq. Section 201 of the Act of 1943, provided as follows:

"The following subjects and property shall as hereinafter provided be valued and assessed and subject to taxation for all county, borough, town, township, school, (except in cities), poor and county institution district purposes, at the annual rate, (a) All real estate, to wit: Houses . . . buildings, lands, lots of ground and ground rents . . . mills and manufactories of all kinds, and all other real estate not exempt by law from taxation."

Pursuant to this authority granted to it by the legislature, the county commissioners in 1956 hired the services of Cole-Layer & Trumble Company, an appraisal firm from Dayton, Ohio, to conduct the necessary appraisals of all properties in Cambria County. This contract was dated March 8, 1956, and one of its main provisions was that this appraisal firm would "aid the Chief Assessor in placing an assessed value for the tax year 1957 upon all residential, commercial, industrial, Public Utilities and all exempt properties." This contract was in the amount of $395,000. Concurrently with this initial contract, the firm of Gavin, Larsen & Kimball was hired to do the mapping work for the county for the sum of $297,000. For each year since 1956, other contracts have been given for mapping, varying in amounts from $16,000 to $68,900. Each of the respective mapping contracts

from the years 1956 to and through 1975 are in the file of the office of County Controller Robert McCormick.

Likewise, the firm of Cole-Layer & Trumble Company was given additional maintenance contracts as follows:

| | | |
|---|---|---|
| 1959 | $39,000 | |
| March 22, 1960 | $22,500 | From 8/1/60 to |
| | $30,000 | 8/1/61 |
| October 16, 1961 | $30,000 | From 8/1/61 to |
| | | 8/1/62 |
| September 17, 1962 | $44,000 | From 8/1/62 to |
| | | 8/1/64 |
| August 4, 1964 | $44,000 | From 8/1/64 to |
| | | 7/31/67 |
| August 22, 1967 | $19,500 | From 8/1/67 to |
| | | 7/31/68 |
| September 24, 1968 | $23,000 | From 8/1/68 to |
| | | 7/31/69 |

(Yearly Maintenance)

| | | |
|---|---|---|
| September 23, 1969 | $23,000 | From 8/1/69 to |
| | | 7/31/70 |

On February 25, 1969, the commissioners granted to the firm of Cole-Layer & Trumble Company a contract for the complete re-evaluation and re-assessment of all properties in Cambria County for the sum of $450,000.

This petition by the Cambria County Commissioners is not an appeal from any contractual dispute made by its contract appraisers, Cole-Layer & Trumble Company, or by its chief assessor. It is a petition asking for the compromise of taxes for the reason that machinery and equipment of the Haws Refractories Company should not have been considered or included as part of the real estate in the determination of the

real estate value for taxation purposes beginning with the first day of January 1956.

This petition was the result of a series of meetings and conferences by and between the Haws Refractories Company and the county commissioners. Commissioner Joseph B. Gorman indicated that Haws "were going to renovate and open up if there was a tax compensation hearing." It was the consensus of the county commissioners that it would be to the advantage of the people of Cambria County that 52 jobs in the Haws plant be preserved for the economic well being of the community. Commissioner Gorman indicated that the Haws site on Cooper Avenue (property 90-34-101.1 and 67-01-113) would have as its best possible advantage . . . industrial development of the area. It was Commissioner Gorman's position that the sale of this plant site for delinquent taxes would not, in his opinion, produce more money than the taxes that are now due and owing from the property.

Michael Jerome, Chief County Assessor, testified that he was not familiar with the valuation of the property for tax purposes between the years 1956 and 1961, but that he did know that the assessed values for the properties in question were changed in 1967. Thus, the assessment of these properties for the years 1968 and subsequent thereto are not disputed and there is no evidence to indicate any erroneous assessment. No appeal of any assessment was made by Haws pursuant to the County Assessment Law in sections 701, 702, 704 and 705 of said act, Act of May 21, 1943, P. L. 571, 72 PS §5453.101, et seq.

It is the position of Haws that this compromise should be granted based on the equities of the matter. Haws, through its chief executive officer, Charles P. Johnson, sets forth in detail that, in his analysis, the assessment of all Haws properties from the years 1961

through 1972 inclusive must be averaged in order to compensate for the alleged excess tax paid by Haws in the period from 1956 through 1967. Although in computations of its equitable figure, Haws only takes the years from 1961 to 1972 in setting forth that the total taxes due would amount to $75,515.55 and that the taxes due and owing for the years 1968 to 1972 would amount to $38,511.18. Thus, their reasoning is that the taxes that are delinquent from the years 1968 to 1972, inclusive, should be compromised for the sum of $1 because Haws overpaid its taxes in the years 1961 through 1968.

Haws cites in its brief, as authority for the court's consideration, several cases on both the county and State level. In the first case cited. The Patton Clay Works, entered to June term 1966, no. 3, C.P., the Court of Common Pleas of Cambria County compromised $42,618.56 in delinquent taxes for the sum of $426.19. In that case, the Patton Clay Works were owned by the Patton Municipal Authority, which was formed to provide industry for the Patton Borough Area. In order for the Patton Authority to reopen the plant and give employment to the people of Patton and of the surrounding area, it was necessary that some compromise be reached on delinquent taxes assessed against the plant. In that case, Commissioner Raymond B. Johnson, the same Raymond B. Johnson as is one of the petitioners in this case, testified that there was no reasonable chance of collecting the sum of $42,618.56 if the property were sold at treasurer's sale. He indicated the piecemeal sale of the plant and equipment would not only end jobs for the community but would not produce the revenue necessary to pay the taxes.

In this Haws case, the president of Haws does not believe that he will reopen this plant. In fact, the con-

trary is evident in the record. The chief executive officer of Haws believes that he would be "better off to build another plant." He likewise felt that this plant site along Cooper Avenue "would make a nice shopping center." He indicated that the Cooper Avenue site "is not the best industrial site but I think it's a pretty good commercial site."

Thus, the Patton case and this Haws case differ in its respective facts as well as its primary purpose in support of the compromise.

The legislative policy of our state government is to encourage expansion of existing industry as well as to create new industry and new jobs. That job-seeking policy is thoroughly documented and serves as a basis for the Supreme Court's decision in the Jones & Laughlin Tax Assessment Case, 405 Pa. 421 (1961). It was held that improvements upon real estate, whether fast or loose, which are used directly in manufacturing the products that the establishment is intended to produce and are necessary integral parts of the manufacturing process and are used solely for effectuating that purpose, are excluded from the real estate assessment and taxation. On the other hand, the improvements, which benefit the land generally and which may serve various users of the land, are not exempted from real estate assessment and taxation. Neither are structures which are not necessarily integral parts of the manufacturing processes and which are separate and apart therefrom within the exclusion. A structure used for storage, for example, is part of the realty and subject to real estate taxation.

In that Jones & Laughlin case, the Borough of Aliquippa appealed the tax assessment made upon the Jones & Laughlin steel plant after the County Commissioners of Beaver County had hired the firm of Cole-Layer & Trumble Company to conduct re-

appraisals of the property in Beaver County. It is the same Cole-Layer & Trumble firm that was hired by the Cambria County Commissioners to conduct the re-appraisal of Cambria County properties in 1956 and again in 1971.

There is no testimony whatsoever to establish that the expert firm of Cole-Layer & Trumble Company in any way misappraised or misevaluated the property of Haws. The County of Cambria has spent well over a million dollars to remap, reevaluate and keep up to date the appraisals of land, residences, commercial sites and industrial properties. In fact, the record would indicate otherwise. The lack of any assessment appeal likewise indicates a proper and fair assessment of Haws' properties.

Although this petition includes all the Haws properties, there is no evidence whatsoever to indicate that the property in the twentieth ward, consisting of 0.8 acres and used as industrial storage building and which is not part of any option agreement with the Johnstown Industrial Development Corporation, has been in any way misvalued or improperly assessed.

These properties under law should have been exposed for tax sale in the year 1971. At that time, a true test of the market value of subject properties could have been made. Had there been no bidder to buy in the property, the commissioners would, under law, have become legal title holder subject to the right of redemption by Haws for a period of two years after date of the sale. These properties were not exposed at treasurer's sale and thus, we have no concrete evidence as to whether or not any bidder would have bid in excess of the amount of the delinquent taxes. For reasons not stated in this record, there was no tax sale held in 1971 based on the delinquent 1968 taxes; no tax sale held in 1972 for delinquent 1969 taxes, and no tax sale held in 1973 for the delinquent 1970 taxes.

In the Patton case, the respective township and school authorities were notified of the presentation of the petition to compromise taxes and these municipalities chose not to protest the compromise. In this Haws case, the Township of West Taylor, City of Johnstown and Greater Johnstown School District have protested this compromise.

From a reading of the Act of Assembly, it appears that more than one taxing authority should concur that the amount that could be realized at tax sale would not exceed the value of the property. In this case only one municipality, the County of Cambria, makes such a representation, but conditioned upon the belief that 52 jobs would be saved for the City of Johnstown.

The court is impressed with and concerned about the possible acquisition of the gas rights to this property by the Johnstown Industrial Development Corporation. Mr. Burkhart, president of said corporation, pointed out the value that can be realized from the acquisition of this site for the providing of jobs for Johnstown. This gas-rights-asset adds more value to the site and would probably attract more bidders for the site. In fact, JARI itself could be a bidder at the prospective tax sale of these lands. It thus would acquire not only the land and building, but also the gas rights.

This petition originally began as a device to save 52 jobs for the Greater Johnstown Area. The evidence presented at the hearing at the time of presentation of this petition indicates that no saving of jobs will result. In fact, it's the thinking of the chief executive officer of Haws to convert a portion of the property covered by this petition into a commercial shopping center site.

It is concluded by this court that the compromise is improper and that the delinquent taxes stated in

712

this petition must be paid or the respective properties must be exposed for public sale in accordance with the laws of this Commonwealth. It thus appears from all the evidence in this case that Haws is, and must be treated, in exactly the same manner as any other individual tax payer.

## DECREE

Now July 23, 1974, in consideration of the foregoing opinion (after hearing and consideration of the briefs), it appearing to the court that the compromise is improper and not in accordance with provisions of the Act of November 23, 1938, P. L. 90, sec. 1, as amended 72 PS §5551, and not to the advantage of the County of Cambria and of the taxing authorities of West Taylor Township, City of Johnstown and Greater Johnstown School District, it is ordered that all delinquent taxes, penalties and interest stated in the within petition be paid to the Treasurer of Cambria County or, in default thereof, the respective properties covered by this petition be advertised for public sale in accordance with law.