## Morris *v.* Board of Property Assessment, Appellant.

Argued October 6, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James Victor Voss,* Assistant County Solicitor, with him *Francis A. Barry,* First Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for appellant.

*William H. Eckert,* with him *Eckert, Seamans & Cherin,* for appellees.

OPINION BY MR. JUSTICE JONES, February 25, 1965:

In the case at bar, the Board of Property Assessment, Appeals and Review of Allegheny County (Board), appeals from an order of the Court of Common Pleas of Allegheny County which reduced the real estate assessment of appellees' property for the triennial years 1960-1961-1962. The court reduced the assessment only on the land from $49,900 to $29,500, a total reduction of $20,400. That was the only reduction granted and involved a tax saving to appellee of

approximately $3978 over the triennial period. On this appeal the *sole* controversy between the parties concerns the assessment figure placed upon the land and the tax involved in the reduction of that figure.[1]

While the "thing from which the property owner appeals (and, therefore, the matter before the court) is the total assessment of the property as a unit" (*Sheldon Hotel Corporation Assessment Appeal*, 362 Pa. 313, 316, 66 A. 2d 242), the "total assessment" figure does not determine the jurisdiction of this Court to entertain this appeal. That which does determine and delineate the respective jurisdiction of the Superior Court and our Court is the actual "amount in controversy": Act of August 14, 1963, P. L. 819, §1, 17 P.S. §184.

What is the "amount in controversy" in this type of action? In *Du Bois's Appeal*, 293 Pa. 186, 192, 193, 142 A. 134, this Court said that the test of appellate jurisdiction is the amount of taxes sought to be avoided, not the value of the property upon which they are assessed. In *Jackson Appeal*, 191 Pa. Superior Ct. 455, 458, 157 A. 2d 100, the Superior Court stated: "Had the assessment been made, and the appeal to the Court of Common Pleas been taken, under the above county assessment law this Court would have jurisdiction, as the amount involved is measured not by the amount of the assessment involved but by the amount of tax

---

[1] We have recently stated: "The basic and controlling substantive issue in a real estate assessment appeal is the correctness of the total assessment of the property as a unit. North Park Village, Inc. v. Bd. of Property Assessments, 408 Pa. 433, 184 A. 2d 253 (1962) ; see Sheldon Hotel Corp. Assessment Appeal, 362 Pa. 313, 66 A. 2d 242 (1949). A stipulation as to the fair market value of land or improvements is merely an evidentiary expedient and does not alter the court's obligation on review to pass upon and to determine the correctness of the property assessment as a whole." *Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Bd. of Property Assessment*, 417 Pa. 243, 209 A. 2d 394.

sought to be avoided, which in this case is under $5000 [citing *Du Bois's Appeal,* supra]".[2]

The "amount in controversy" measured by the amount of taxes involved in the instant appeal is less than $10,000 and, therefore, sole jurisdiction to entertain this appeal lies in the Superior Court. It is of vital importance that we entertain appeals only in actions where we have jurisdiction.

The appeal is remitted to the Superior Court.

___

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The Board of Property Assessment, Appeals and Review* appeals from an Order of the Court of Common Pleas which in effect reduced the assessed value of appellees' property *in Pittsburgh* from $187,900 to $167,500. The property involved is a shopping center, consisting of land and a large building erected thereon. The property was valued and assessed by the Board for the triennium commencing in 1960, at $187,-900, which was broken down into a land valuation of $49,900 and a building valuation of $138,000. The parties agreed upon the assessed value of the building, namely, $138,000, but differed as to the correct assessment and value of the land. Although the taxes on this property, for the triennium, or the separate tax on the land and the separate tax on the building do not appear in the record** or in the majority opinion, it is undisputed that the *tax* on the entire property for the triennium, under the Board's valuation, was $29,-143.98, and under the Court's valuation over $25,000.

___

[2] If the rule were otherwise, rarely would the Superior Court have jurisdiction in tax assessment appeals and practically all appeals in this class of case would be to this Court.

* Hereinafter referred to as the Board.

** It would be interesting to attempt to compute how many hundreds of times the Court has said in other cases that we will not consider anything which is not a part of or included in the record.

The lower Court, we repeat, considered only the value of the land and reduced the assessment of appellees' land from $49,900 to $29,500—it did not even discuss the subject or amount of taxes.

The majority Opinion admits and a myriad cases state the general rule that an appeal lies from the (Order which fixes the) *assessments* of the *entire* property. Nevertheless, the majority Opinion states that this Court has no jurisdiction because the jurisdiction is determined *by the difference in tax due under the Court's assessment of the land alone and that claimed by the appellant* to be due on the land alone, for the triennium. Not only is there no case or statutory authority to justify this test, but on the contrary (1) literally a score or more cases demonstrate that this is not the test—indeed it cannot be—and (2) the statute, and (3) the analogous cases undoubtedly refute the majority's test for jurisdiction.

The City of Pittsburgh under the Second Class City Act, is required to *separately assess land and buildings,* and a different rate of millage tax is required to be imposed upon buildings, from that which is imposed upon land exclusive of any building thereon. This different millage and separate assessment are mandated by the Act of March 7, 1901, P. L. 20, as amended, 53 P.S. §25,894.

The Act of August 14, 1963, P. L. 819, §1, provides that the Superior Court shall have jurisdiction of "all actions and proceedings at law . . . if the subject of the controversy be either money,* chattels, real or personal, or the possession of or title to real property, *and*

---

* "Money" includes the value of the right sought to be enforced if it can be expressed in money: *Ribblet v. Westrick,* 341 Pa. 484, 19 A. 2d 394; *Bily v. Board of Property Assessment,* 157 Pa. Superior Ct. 252, 42 A. 2d 322; *Bono v. Krommes,* 201 Pa. Superior Ct. 449, 193 A. 2d 762.

*if also the amount or value thereof in controversy* be not greater than ten thousand dollars, exclusive of costs."

The majority bases its opinion that the Superior Court has jurisdiction upon the Act of August 14, 1963. If that Act is not applicable,** then the Superior Court has no jurisdiction; if it is applicable, then the majority has misconceived and misconstrued it.

Once more, we repeat, it is exceptionally rare that any real estate assessment case either in the Court of Common Pleas or on appeal to the Supreme Court or to the Superior Court, shows (a) the amount of taxes which are allegedly due, or (b) the tax rate. Indeed, at the time of the assessment or at the time of the appeal, neither the taxes which are due, nor even the rate of tax, may have been fixed by Statute or Ordinance. It would therefore seem clear (1) that the assessments fixed by the lower Court and not the taxes should be the test of our jurisdiction, but (2) *in no event, should the test be the difference* between the amount of taxes resulting from the Court's assessment of the land and the amount of taxes which appellant claims would be validly due thereon. Moreover, if expert witnesses for an appellant gave six widely different values, which value does appellant claim is the correct one, and consequently, what is the difference in taxes between the taxes resulting from the Court's Order and those which appellant claims should be due?

---

* Italics throughout, ours.

** Compare Section 2 of the Act of August 14, 1963, which, in Section 7.1 defines how the amount or value in controversy shall be determined and seemingly limits it to actions in ejectment and actions involving possession of or the title to real property or chattels real or personal, and judgments, orders, decrees or awards involving damages either for a tort or for a breach of contract.

In other words, according to the majority, *"what is the tax sought to be avoided?"*

In the six other real estate assessment cases in which Opinions are being filed simultaneously herewith,* not one of them states the amount of taxes which have been imposed or are allegedly due, and not one of these six Opinions even mentions the test promulgated by the majority in the instant case.

A few analogous cases will further demonstrate that *"the amount or value in controversy"* is not the difference in tax between that resulting from the Court's assessment and that contended for by appellant. For example, in eminent domain cases, where the value of the property is the issue, and where real estate experts differ sometimes 2% or 10% or 1000% or 1500%, the jurisdiction of this Court does not depend and never has depended, upon the difference between the verdict (or award) and the amount or value contended for by the appellant.

In *Durika v. Derry Twp. School District*, 415 Pa. 480, 203 A. 2d 474, a *jury awarded plaintiffs $13,400* for their property which had been condemned for school purposes. The lower Court refused to grant a new trial and plaintiffs appealed from the Judgment entered on the verdict. Plaintiff testified the property had a value at the time of taking of $16,500 and his expert witness fixed the value at $15,500. An expert witness for the School District testified that the property had a value of $13,100, and another expert $13,400. Under the jurisdictional test established by the majority in the instant case, *the amount or value in controversy*

---

*H. J. Heinz Company v. Board of Property Assessment; Rieck Ice Cream Company Appeal; McKnight Shopping Center, Inc. v. Board of Property Assessment; Casa Loma, Inc. v. Board of Property Assessment; Deitch Company v. Board of Property Assessment; and Pittsburgh Miracle Mile Town & Country Shopping Center, Inc. v. Board of Property Asessment.

*was $3,100,* yet this Court had not the slightest doubt of our jurisdiction.

In negligence and assumpsit cases it often occurs that in spite of a large verdict, the only disagreement between the parties involves an item which is less than $10,000, yet this Court's jurisdiction is the amount of the verdict. If a plaintiff obtains a verdict of $20,000 in a negligence or assumpsit case and the lower Court enters an Order granting a new trial unless plaintiff will file a remittitur of $7,500, and this reduced verdict is satisfactory to defendant—if plaintiff appeals, the appeal lies to this Court, although the difference between the amount claimed by appellant and that admitted to be due by appellee is only $7,500.

The majority derive their test from a statement in *DuBois's Appeal,* 293 Pa. 186, 142 A. 134. This statement reads (pages 192-193) : "... It is not the amount of the assessment which will control in determining the sum in dispute. *'As a general rule* the test of appellate jurisdiction in actions involving the validity of taxes or liability for the payment thereof *is the amount of the taxes sought to be avoided,* and not the value of the property upon which they are assessed': 3 C.J. 427." This case is clearly distinguishable for *each* of four reasons:

In the first place, (1) that case involved coal lands, a subject which has become a law unto itself and has perplexed and vexed the Courts for years.* (2) Even the test stated in *DuBois* has never once been followed or approved by the Supreme Court; and (3) It is contrary to the practice followed by a myriad of subsequent cases; and (4) In that part of the general rule

---

* For example, a lease is considered a sale in place; whether the parties intended the payments to terminate at the end of the lease or when the coal was exhausted; and there is a further novelty in that the land is divided into surface, coal, and lateral support.

hereinabove quoted in *DuBois* "The amount of the taxes sought to be avoided" is ambiguous. In my judgment, that language in the context in which it was used, meant and was intended to mean, the *total taxes* sought to be avoided by the property owner, and not the difference in tax between that fixed by the Court and that contended for by appellant.

Although the Court in *Sheldon Hotel Corporation Assessment Appeal*, 362 Pa. 313, 66 A. 2d 242, was thoroughly familiar with *DuBois's Appeal*, 293 Pa., supra, which it cited for the proposition that an appeal to the Common Pleas Court is de novo, it said (page 316) : "The thing from which the property owner appeals (and, therefore, the matter before the court) is the total assessment of the property as a unit. The appellant's petition for an appeal in the present matter plainly so recognizes."

In *Rieck Ice Cream Company Appeal*, which is filed simultaneously herewith, the majority Opinion of the Court states: "The thing from which the property owner appeals and, therefore, the concern before the court is the total assessment of the property as a unit."

We have seen that with the one exception of *DuBois*, the appeal is always taken from the assessment of the entire property, or as some cases permit, from the assessment of one of its component parts.

In *Buhl Foundation v. Board of Property Assessment, Appeals and Review*, 407 Pa. 567, 180 A. 2d 900, Justice EAGEN, delivering the unanimous Opinion of the Court, said (page 569) : "This appeal is from an order of the court below sustaining a triennial real estate tax assessment. The property involved is a private housing development in the nineteenth ward of the City of Pittsburgh, known as Chatham Village.

". . . The assessment appealed from involves only that levied against the buildings; the land assessment is not in litigation.

. . .

"The assessment of the entire property was increased for the triennial years of 1957-1958-1959, from $911,450 to $1,282,360. All of this increase was on the buildings which were raised in valuation from $674,610 to $1,043,720, or fifty-five per cent."

In *North Park Village, Inc. v. Board of Property Assessment*, 408 Pa. 433, 184 A. 2d 253, this Court considered the assessment of the property for real estate tax purposes in 1958 and then the assessment for the triennial years 1959, 1960 and 1961, and said (page 435) : "The correctness of the assessment placed on the improvements is not here questioned, nor was it attacked below. It is contended, however, that the assessed valuation of the land itself exceeds the fair market value thereof and also is in violation of the constitutional requirement of uniformity. Neither contention is sustained by the record."

All of these cases, as well as a myriad of unreported cases, demonstrate that the question involved for jurisdictional purposes, and the concern before the Court, is the assessment of the entire property, or the assessment of one of its challenged component parts, and in no event is it, as the majority states, the difference in taxes due under the assessment fixed by the Court and those claimed to be due by the appellant.

Nevertheless, if the majority wishes to establish a new practice and *a new test for jurisdiction,* namely, the amount of taxes which result from the Court's assessment of the entire property, I would have no serious objection. However, how the majority can justify a test, viz., the *difference between the taxes* resulting from the assessment found by the Court and those which would be imposed if appellants' valuation and assessment prevails, is incomprehensible—especially (1) when in a myriad of cases the taxes are never mentioned in the record, and (2) the taxes (a) may not yet have been fixed by Statute or Ordinance, and

(b) may be changed in the triennial period in question.

It is clear, therefore, that this Court has jurisdiction of this appeal which involves an assessment of $167,500 for the entire property, or an assessment of $29,500 for the land alone, and over $25,000 in taxes on the property in its entirety.

We turn, therefore, to the merits, which raise the question of lack of uniformity and the applicable practices, procedures, presumptions and pertinent law in real estate assessment appeals.

We start with the Constitution of Pennsylvania which provides in Article IX, §1: "All taxes shall be *uniform, upon the same class of subjects,* within the territorial limits of the authority levying the tax, . . . ." The Equal Protection Clause of the 14th Amendment to the Constitution of the United States likewise encompasses and protects taxpayers in this field.

The legislative acts relating to classification and assessment of real estate have often been too loosely drawn. The result is that wide differences of opinion and confusion have been created among assessors and attorneys as to the law and the proper practice in this class of case. We believe it is wise and necessary, therefore, to quote pertinent parts of loosely interrelated Statutes and to restate certain principles which are applicable in this case and differentiate it from other situations with which they have been confused.

The Act applicable to property assessment in Allegheny County was impliedly modified by the *Second Class Cities Law* with respect to the City of *Pittsburgh.* In Allegheny County, real estate is required to be assessed according to the *actual value* thereof: Act of May 22, 1933, P. L. 853, §402, as amended by the Act of May 16, 1939, P. L. 143, §1, 72 P.S. §5020-402. As interpreted, the Act of May 22, 1933, supra, requires the assessment of real property in its entirety: *North*

*Park Village, Inc. v. Board of Prop. A., A. & R.,* 408 Pa. 433, 436, 184 A. 2d 253. However, the Act of June 15, 1939, P. L. 346, 53 P.S. §25891, as amended by the Act of May 26, 1943, P. L. 627, by necessary implication modifies that requirement as to property *in second class cities.* Section 1 of that Act provides: "Section 1. All city taxes *in cities of the second class* to be levied and assessed for the year one thousand nine hundred and forty-three and subsequent years, shall be levied and assessed on the real estate and personal property as contained in the assessments made for county tax purposes for said year. It shall be the duty of the proper county assessing authorities to assess all property in cities of the second class, whether real or personal, taxable under any general, special or local law for city purposes, to designate real property or parts thereof or property thereon not taxable for city purposes *and to classify all real property in such cities* in such manner and upon such testimony as may be adduced before them *so as to distinguish between the buildings on land and the land exclusive of the buildings. . . .*"*

The Act of June 15, 1939, with its repealer provisions did not repeal that part of Article VI of the Act of March 7, 1901, as amended, which required councils ". . . to assess a tax upon the buildings equal to five-tenths of the highest rate of tax required to be assessed for each year respectively, *so that upon the said classes of real estate of said city* there shall, in any year, *be two rates of taxation.*"

A statute or ordinance (a) classifying land and buildings separately and (b) authorizing the taxation

---

* We are informed that it is the custom in all or nearly all counties of Pennsylvania for the assessors to fix a value on the taxpayer's building and a separate value on the land, and fix the value and total assessment of the entire property as the sum of these two separate component parts.

of real property within a taxing district on the basis of one millage for a building and *a different millage for the land* is a reasonable classification and would not violate the Constitution of Pennsylvania or the Constitution of the United States: *Hammermill Paper Co. v. Erie,* 372 Pa. 85, 92 A. 2d 422; *Philadelphia v. Smith,* 412 Pa. 262, 194 A. 2d 177; *Narehood v. Pearson,* 374 Pa. 299, 96 A. 2d 895; *Jones & Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A. 2d 856; *Susquehanna Col. Company's Appeal,* 335 Pa. 337, 6 A. 2d 831; *Jermyn v. Scranton City,* 212 Pa. 598, 62 A. 29.

The general principles, presumptions and practices in this field of real estate assessments (unless otherwise provided by statute) are clearly stated in *North Park Village, Inc. v. Bd. of Prop. A., A. & R.,* 408 Pa., supra, and in *Brooks Building Tax Assessment Case,* 391 Pa. 94, 137 A. 2d 273. Since the pertinent principles are more fully set forth in the *Brooks Building Case** we shall quote the relevant parts of that Opinion (pages 97-101):

" 'The term "actual value" means "market value": Park Drive Manor, Inc., Tax Assessment Case, 380 Pa. 134; Flamingo Apartments, Inc. v. Board of Revision of Taxes, 383 Pa. 223.

" 'And market value has been defined as the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, . . . Lehigh & Wilkes-Barre Coal Company's Assessment, 298 Pa. 294, 300, 148 A. 301 . . . .

" '. . . Each property should be assesed at its fair market value; it cannot be assessed at more than its fair market value or higher than the percentage of value uniformly fixed throughout the taxing district, . . . .

---

* While the *Brooks Building Case* arose under the Third Class City Code, that Code required the valuation of real estate to be made according to the actual value thereof.

" ' " ' . . . where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law.' " '

" ' "There is a presumption that the assessor in this case performed his duty and that in compliance with the law, assessed the land at its full 'actual value.' . . .

" '. . .In Lehigh & Wilkes-Barre Coal Co.'s Assessment, 225 Pa. 272 . . . page 276.

" ' " 'The orderly method . . . is to offer in evidence the assessment of record . . ., as approved by the board of revision, . . . *This makes out a prima facie case showing the validity of the assessment.** The complaining real estate owner then has the laboring oar *to show by the weight of the evidence* that he has been aggrieved by the valuation so fixed* . . .' . . . ." '

---

* The same rule and the same language is repeated in *Baldwin-Lima-Hamilton Corporation Appeal*, 412 Pa. 299, 194 A. 2d 434; *North Park Village, Inc. v. Board*, 408 Pa., supra; *Buhl Foundation v. Board*, 407 Pa., supra; *Hammermill Paper Co. v. Erie*, 372 Pa., supra; *Washington County v. Marquis*, 233 Pa. 552, 557, 82 A. 756. Accord: *Chatfield v. Board of Rev. of Taxes*, 346 Pa. 159, 29 A. 2d 685; *Westbury Apartments, Inc., Appeal*, 314 Pa. 130, 170 A. 267.

The statement in the majority opinion in *Deitch Company v. Board of Property Assessment*, filed simultaneously herewith, with its qualification, is contrary to a score or more of cases and is incorrect. That statement is as follows:

". . . Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then influence the court's determination of the assessment's correctness. . . ."

". . . The City's second contention that appellant's assessment cannot be changed and reduced unless he proves that a *uniform* ratio of assessed value to actual value has been applied *generally* throughout the entire district is likewise erroneous.

"In Harleigh Realty Company's Case, 299 Pa., supra, the Court said (pages 389-390) : 'It is urged that if the assessment does not exceed the actual value of the property as fixed by the court below from the testimony of the experts on both sides, the property owner should then be required to produce testimony as to the value of other properties throughout the district, . . . If this procedure were to be adopted, each property owner appealing would have to revalue *every other* property in the district. To put upon a property owner challenging an assessment such a burdensome and expensive method of asserting his rights would amount to a denial of justice.' "

In *Buhl Foundation v. Board of Property Assessment*, 407 Pa. 567, 180 A. 2d 900, the Court in a unanimous Opinion by Justice EAGEN said (page 569) :

". . . The property involved is a private housing development in the nineteenth ward of the city of *Pittsburgh*, known as Chatham Village.

". . . *The assessment appealed from involves only that levied against the buildings;* the land assessment is not in litigation. . . .

"The assessment of the entire property was increased for the triennial years of 1957-1958-1959, from $911,450 to $1,282,360. All of this increase was on the buildings, which were raised in valuation from $674,610 to $1,043,720, or fifty-five per cent. . . ."

The Board introduced in evidence its assessment of appellees' property with a breakdown of the valuation and assessment into (a) land and (b) building. This, as we have seen, made out a prima facie case.

Appellant-Board has five contentions:

(1) The Board contends that the appellees' sole (and alleged) expert witness (Mr. Morris, the owner) was incompetent because (a) he was not a licensed real estate broker, and (b) his testimony was incredible. Mr. Morris does not have a real estate broker's license but we agree with the hearing Judge that that is not sufficient to exclude his testimony if he is otherwise qualified to express an opinion: *Gilleland v. N. Y. State Natural Gas Corp.*, 399 Pa. 181, 159 A. 2d 673; *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 377, 176 A. 13. Morris has had 30 years' experience in the real estate business; he was familiar with the comparable property namely the property of Standard Structures Shopping Center and of course with his own property, as well as with their respective locations, features and economic values when considered with nearby businesses; and he also knew the buying and selling prices prevailing in the area. The hearing Judge held that Morris was adequately qualified to express an opinion on the fair market value of each property, even though he did not know of an easement of ingress and egress on Standard's property.

Whether Morris was qualified was a question for the sound discretion of the trial Judge and his ruling will not be reversed by an appellate Court except in the case of clear error: *Stevenson v. East Deer Township*, 379 Pa. 103, 108 A. 2d 815, and a host of cases cited therein. I find no error in this ruling.

The assessments for the 1960 triennial on the building and on the land of each of these two shopping centers, their fair market values, and the percentage or ratio which each assessment bears to its respective market value, according to the findings of the hearing Judge, which were supported by the uncontradicted testimony in the case, were as follows:

|  |  | A<br>Assessment | B<br>Fair Market | Percentage<br>of A to B |
|---|---|---|---|---|
| Morris | Land | $ 49,900 | $ 35,000 | 142% |
| Shopping | Building | 138,000 | 200,000 | 69% |
| Center | Total | 187,900 | 235,000 | 80% |
| Standard | Land* | 37,510 | 115,000 | 33% |
| Structures | Building | 135,000 | 200,000 | 67% |
| Shopping<br>Center | Total | 172,510 | 315;000 | 54% |

The lower Court further found that appellees established by uncontradicted and credible testimony that the Standard land (1) is *more than twice as large as appellees' land, but was assessed at (approximately) one-quarter less than appellees' land*; (2) that it is the only other shopping center along the same street, in the same ward, in the City of Pittsburgh; (3) that it is *the only other comparable land;* and (4) that it is much more valuable than appellees' land. This conclusion was supported (a) not only because of Standard's much larger size, but also because it furnishes the amount of parking space needed by buildings in a shopping center of the size of each of these two shopping centers, and (b) it is in a better and more prosperous neighborhood for business purposes; and (c) it is more accessible to motorists due to its being at the grade of the side street; and (d) its topography frees it from the constant, expensive maintenance and building costs with which appellees' land is burdened. Those objective facts, added to the opinion and conclusion of appellees' expert (Morris) whom the hearing Judge believed, could justify the lower Court's findings and conclusions.

(2) The Board's second contention is that *lack of uniformity* cannot be based or founded upon a comparison with *only one* property. The general rule is

---

* The only comparable property.

that lack of uniformity can and must be shown, in the language of *Brooks Building Tax Assessment Case,* 391 Pa., supra (pages 101-102), "by evidence of the market value of his [taxpayer's] property *and of similar properties of the same nature in the neighborhood* and by proving the assessments of each of these properties and the ratio of assessed value to actual or market value. The City's first contention that appellant's assessment cannot be changed unless it exceeds the market value is utterly devoid of merit. The City's second contention that appellant's assessment cannot be changed and reduced unless he proves that *a uniform* ratio of assessed value to actual value has been applied *generally throughout the entire district* is likewise erroneous.

[I repeat] "In Harleigh Realty Company's Case, 299 Pa., supra, [299 Pa. 385, 149 A. 653] the Court said (pages 389-390) : 'It is urged that if the assessment does not exceed the actual value of the property as fixed by the court below from the testimony of the experts on both sides, the property owner should then be required to produce testimony as to the value of other properties throughout the district, . . . . If this procedure were to be adopted, each property owner appealing would have to revalue *every other* property in the district. To put upon a property owner challenging an assessment such a burdensome and expensive method of asserting his rights would amount to a denial of justice.' "

Moreover, to require lack of uniformity to be shown by comparison with more than one comparable property in the neighborhood would sometimes be impossible or unjust (cf. *Matsons Appeal,* 152 Pa. Superior Ct. 424, 33 A. 2d 464), especially where there is only one comparable property in the neighborhood. Where, as here, the hearing Judge specifically finds that the Standard property is "the only valid and comparable

property existing in the district", one comparable property is adequate in law.

(3) The Board further contends that a property owner must have more than one expert witness in order to overcome the prima facie case which is made out when the Board introduces into evidence its assessment. The assessment is, in the last analysis, nothing but an opinion, so that the issue is ofttimes resolved into opinion against opinion.* More importantly, the testimony of one legally competent witness—irrespective of whether he be a party, or a lay witness, or an expert witness—on the crucial point involved, is sufficient to take a case to the jury,** although the credibility *and the weight* of his testimony are of course initially for the triers of fact.

(4) The Board's fourth contention is that Standard's land was not comparable because there were a number of comparable parcels of land which were nearer to the property of the appellees, *and these were the only comparable properties.* The Board offered no testimony or evidence to rebut appellees' evidence on this or on any of the other issues involved in this case. The hearing Judge disagreed with the Board and found (I repeat) that Standard's property was *"the only valid and comparable property existing in the district."*

It must be obvious to all that an appellate Court cannot be a Board of Real Estate Assessment, and we have wisely and realistically decided that the test in

---

* Moreover, opinion evidence as to the value of real estate often differs radically and is among the least reliable of all forms of evidence. Cf. *Huck-Gerhardt Company v. Kendall,* 189 Pa. Superior Ct. 126, 134, 149 A. 2d 169; *Commonwealth v. Jordan,* 407 Pa. 575, 583, 181 A. 2d 310, and cases cited therein.

** Except in those cases where a statute or a rule of law requires two witnesses or one witness plus corroborating circumstances.

this Court is whether the Court below clearly abused its discretion or committed an error of law. Cf. *Park Drive Manor, Inc. Tax Assessment Case,* 380 Pa. 134, 110 A. 2d 392; *Chatfield v. Board of Revision of Taxes,* 346 Pa. 159, 29 A. 2d 685; *Westbury Apartments, Inc., Appeal,* 314 Pa. 130, 170 A. 267. The value of a real estate property is ofttimes not a matter of exact science or capable of mathematical accuracy and is often difficult to determine. Moreover, it is often difficult for an appellate Court to determine what properties are comparable, and what is the fair market value of any property, and no testimony was offered by the Board to rebut appellees' evidence or the finding of the hearing Judge on this point. For this reason, we cannot say that the hearing Judge clearly abused his discretion.

(5) The Board contends that the appellees have not satisfied their burden of proof because—unlike the evidence produced by the Board—they did not prove the *fair market value of their entire property* but merely proved the market value and the assessment of their land and the comparable property and the ratios with respect *to their land* and the land of the comparable property. To support this proposition they rely upon: *Hammermill Paper Co. v. Erie,* 372 Pa., supra; *North Park Village, Inc. v. Bd. of Prop. A., A. & R.,* 408 Pa., supra; *Gilleland v. N. Y. State Natural Gas Corp.,* 399 Pa., supra. These cases establish the *general rule* that an assessor or councils (as the case may be) may (and in Pittsburgh and Philadelphia must) separately value and assess the component parts of a single subject of taxation, but unless otherwise required by Statute or Ordinance, it is the valuation and assessment of the property as a whole which is controlling. Moreover, that valuation may be the sum total of its component parts, i.e., land and building, which is the customary

standard in real estate assessment cases*, and was the practice which the Board itself and the Court below followed in this case. Cf. *North Park Village, Inc. v. Bd. of Prop. A., A. & R.*, 408 Pa., supra; *Spiwak v. Allegheny County*, 366 Pa. 145, 77 A. 2d 97; *Elgart v. Philadelphia*, 395 Pa. 343, 149 A. 2d 641; *Berkley v. Jeannette*, 373 Pa. 376, 96 A. 2d 118. However, this general rule of fixing a valuation for and an assessment of a taxpayer's property *as a whole* has no application to the City of Pittsburgh, where a distinction between (a) the buildings on the land, and (b) the land exclusive of the buildings, *and a different tax thereon,* is statutorily mandated. See Act of June 15, 1939, supra. In the instant case the Board itself (valued and) assessed the land and the building separately, and all parties and the Court below tried the case on that theory, plus the belief that the sum total of the assessed value (a) of the land and (b) of the building would be the assessed value of the entire property. Furthermore, the Board never raised this issue in its statement of the questions involved. "It is fundamental that questions not raised below will not be heard on appeal": *Capozzi v. Antonoplos*, 414 Pa. 565, 569, 201 A. 2d 420. Even if the Board could now raise this technical objection, it would be (at best for the Board) only a harmless error, in view of its position that the just assessment of this property in its entirety, was the total of the separate assessment of the land and of the building.

I find no abuse of discretion or error of law and would therefore affirm the Order of the Court.

Mr. Justice MUSMANNO joins in this Dissenting Opinion.

———

* The Court may find the market value of the entire property to be larger or smaller than the sum total of its component parts.