462

## Tax Ethics Association v. Cambria County

Before McDonald, P. J., McWilliams and O'Kicki, JJ.
O'Kicki, J., dissents.

*Richard J. Green,* for plaintiffs.
*Robert S. Glass* and *Gilbert E. Caroff,* for defendants.

McDONALD, P. J., August 7, 1973.—This matter is before the court upon complaint in equity by the Tax Ethics Association, an unincorporated association, by certain members and officers as trustees ad litem, and as individuals, against the County of Cambria (herein referred to as county) and Cole-Layer-Trumble Company, a corporation (herein referred to as Cole). Both defendants filed preliminary objections raising issues of jurisdiction and the sufficiency of the pleadings. These were argued before the court en banc.

County entered into a contract with Cole for the appraisal of all real estate in the county. These appraisals were used to reassess all real property for the year 1973.

Plaintiffs contend The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, art. 1, sec. 101, et seq., 72 PS §5453.101, et seq., The General County Assessment Law of May 22, 1933, P. L. 853, sec. 1, et seq., 72 PS §5020-101, et seq., and all real estate assessment laws throughout the Commonwealth, are unconstitutional and void as in conflict with Article 14, §1, of the Constitution of the United States, and Article VIII, §1 of the Constitution of the Commonwealth of Pennsylvania, and, therefore, the assessments are illegal and void. They further contend the appraisals, as prepared by Cole, are illegal and void. Defendants contend equity lacks jurisdiction because plaintiffs have an adequate statutory remedy at law; and the complaint fails to raise a substantial constitutional question, or non-constitutional grounds which would warrant equity's intervention. They further contend the complaint is not specific or sufficient to state a cause of action or permit them to answer.

Many averments of the complaint and its amendment are prolix, vague, conclusory and couched in

general language alleging unconstitutionality of The Fourth to Eighth Class County Assessment Law, The General County Assessment Law, and other statutes relating to assessments of real estate in other class counties and cities of the Commonwealth. These allegations, when capsulated, seek to raise "a substantial question of constitutionality" which will invoke the aid of equity. Additionally, other allegations contend the assessments which, under the law, are made by the Chief County Assessor under the supervision of the Board of Assessment Appeals, were illegal and void because of the improper methods of appraisal by Cole. Thus, it would appear plaintiffs attempt to raise an amalgam of constitutional and nonconstitutional issues.

According to the complaint, this is a class action. The class, as indicated in paragraph 2, consists of "individual taxpayers, citizens, property owners and residents of Cambria County." Since the averments would indicate this is supposed to be a "true class action," Loewen v. Shapiro, 389 Pa. 610, the parties are required to have grounds common to all: Korona v. Bensalem Township, 385 Pa. 283; Gericke et al. v. Philadelphia et al., 353 Pa. 60. The Tax Ethics Association is not defined as a property owner, and is, therefore, not a proper party. However, since persons who coincidentally are officers and members of the association have joined as individuals in the suit, and as representatives of those who are "similarly situated," the suit may be considered as a class action.

It is significant, however, that a class action was filed in this court in 1972: V. Donald Hartnett v. Cambria County Board of Assessment et al., December term, 1972, no. 7 (unreported), and the complaint dismissed. In that action, plaintiff was an individual property owner who brought suit in equity "on behalf

of himself and on behalf of other property owners similarly situated in the County of Cambria." That case raised the same issue as paragraph 7 of the present complaint, i.e., failure to comply with the schedule set forth in section 701 of The Fourth to Eighth Class County Assessment Law, 72 PS §5453.-701. Preliminary objections to the complaint were sustained, and the action dismissed. No appeal was taken. In our view, this illustrates the pitfalls of a taxpayers' class action wherein all property owners of an entire county are members of the class. The issue has been litigated, and is now res judicata as to the class represented in this action. Were it otherwise, the courts would constantly be confronted with successive litigation, raising the same issues which had been previously adjudicated, by persons who were members of a represented class, albeit not actual parties.

The constitutional questions or issues as raised by the complaint and amendment appear in several paragraphs and are multifaceted. However, a common thread runs through the fabric of the argument, i.e., the statutory system of real property assessments upon which property taxes are proportioned is in conflict with and repugnant to the equal protection clause of the United States Constitution and the uniformity clause of the Pennsylvania Constitution.

It is contended the statewide system of assessments of real property is unconstitutional and violates the uniformity clause and/or the equal protection clause for the reasons (1) there is a variance in procedures, timing and appeals (paragraph 9); (2) the appointment of the Board of Assessment Appeals by the county makes the board "responsible to the defendant County of Cambria" (paragraph 10); (3) The Fourth to Eighth Class County Assessment Law, art. VI, secs. 104 and 602, 72 PS §§5453.104 and 5453.602, permits "any city"

in the county to optionally accept the provisions of the law and to adopt a predetermined ratio different from the county (paragraph 11); (4) the assessments which are used by the school districts permit inequities in "the amount available to educate plaintiffs' children," and thus are discriminatory (paragraph 12); (5) the assessments used by municipalities within the county are used as a basis to produce revenue, and discrimination occurs between these municipalities in the quality and quantity of services provided (paragraph 13).

The assessment of property for tax purposes is part of the machinery of taxation. The levy imposes the proportion which the real estate owner pays for public uses. Thus, when plaintiffs seek to have the assessment machinery declared unconstitutional and void, it is no more than a collateral, thinly-veiled attack against the property tax.

"The taxing power is incident to the state's sovereignty, and taxes may be imposed either under the general power of taxation or under the police power. 'The taxing power rests upon the reciprocal duties of protection and support between the state and the citizens, and the exclusive sovereignty and jurisdiction of the state over the persons and property within its territory . . .' ": 35 P. L. Encyc. 494 §2.

The power to tax certain subjects and property may be and has been delegated to municipalities, Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County, 335 Pa. 177, and specifically here by section 201 of the Act of May 21, 1943, 72 PS §5453.201. Thus, county and the various municipalities within its territorial limits, have the power to tax real property, and by the statute referred to above, have the authority under the procedures set forth in The Fourth to Eighth Class County Assessment

Law, to assess all real estate within the geographical limits of the county for this purpose.

The only limitations on the sovereign power to tax are those prescribed by constitutional provision. The most important constitutional limitation requires that, "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, . . .": Article VIII, §1, Pennsylvania Constitution.

The prohibition of nonuniformity is tested within the territorial limits of the authority levying the tax, in this case the defendant county and each of the municipalities: Moore v. Pittsburgh School District, 338 Pa. 466. While we question our jurisdiction to pass on the constitutionality of the assessment laws relating to other counties and municipalities, we perceive in the differing procedures for assessment, depending on the class county and city, no constitutional issue. Since the machinery of assessment merely provides the base for levying taxes, a lack of uniformity in the procedures as between various political subdivisions of the State is not a violation of the uniformity clause. In speaking of the uniformity clause in Moore, the Supreme Court stated at page 472:

"Uniformity of taxation means 'equality of tax burden': . . . that is to say equality territorially. . . . The Constitution does not say that taxes shall be uniform as to classes of municipal divisions of the State, but uniform territorially as the State is divided territorially into cities, counties, townships and school districts."

The legislature has adopted various assessment statutes throughout the Commonwealth to meet the problems engendered by density of population, both urban and rural, industrial and agricultural. It is obvious these differences would require different procedures as between political subdivisions. However,

an examination of the various assessment statutes throughout the Commonwealth indicate all have similar administrative procedures, and a common denominator of due process by statutory appeal. Thus, we would conclude that variances in procedure of the machinery of assessment does not raise a constitutional question under the uniformity clause as would the contention the legislature lacked power to prescribe assessment procedures.

The second constitutional challenge made by plaintiffs is that the system of real property assessment in Cambria County, under The Fourth to Eighth Class County Assessment Law, and also statewide under the laws relating to various class counties and cities, violates the Fourteenth Amendment to the United States Constitution. It is not clear from the pleadings in what manner the violation occurs unless, as broadly stated, the assessment statutes throughout the Commonwealth and in the county lack uniformity of procedure, produce discrimination by inequality of revenue within the various municipalities and school districts, and, as stated in paragraph 10, deprive the taxpaying plaintiffs of their property without due process of law by the method of appointment of a "Board of Assessment Appeals."

We shall address our discussion first to plaintiffs' contention the assessment laws violate the uniformity clause of the Pennsylvania Constitution.

They first contend (paragraph 9) that the lack of uniformity in assessment laws violates the uniformity clause "which provides that all general laws shall be uniform regarding procedural matters. . . ." The uniformity clause is not a procedural limitation, as plaintiffs mistakenly contend, but rather a substantive constitutional restriction on the levy of taxes. It requires uniformity within the taxing unit. It matters not,

therefore, that the procedures for assessment of real property, and the appeal therefrom, vary throughout the Commonwealth, if the tax which is levied is uniform on the same class of subjects based on the assessments within the taxing unit.

Plaintiffs' contention (paragraph 11) that the option of adopting ratios of assessment to actual values not exceeding 75 percent, and the adoption by the City of Johnstown within defendant county of a ratio of 55 percent, rather than 35 percent as in other parts of the county, under section 104 of the Act of May 21, 1943, is a violation of the uniformity clause of the Pennsylvania Constitution. We call attention again to the wording of the uniformity clause which applies to the uniform tax levy upon classes within the levying district. Since the tax which must be uniform is based on assessments, if the ratio of the latter to market value within a taxing district is uniform, as in the City of Johnstown, then it is not a violation of the uniformity clause: McKnight Shopping Center, Inc. v. Board of Property Assessment, 417 Pa. 234; Deitch Co. v. Board of Property Assessment, 417 Pa. 213; Brooks Building Tax Assessment Case, 391 Pa. 94. In speaking of the uniformity clause in Moore, supra, the court stated at page 472:

"But when the broader view is taken and consideration is given to what the purpose of the basic law is, it becomes obvious that its provision is not violated. As applied to municipal territorial divisions of the State, it was intended to make uniform the taxes which persons living within any territorial division of the Commonwealth shall be required to pay to support that territorial division."

We conclude, therefore, plaintiffs have failed to raise a substantial constitutional question under the uniformity clause of the Pennsylvania Constitution.

The second thrust of plaintiffs' complaint is the violation of the equal protection clause of the Federal Constitution.

In paragraph 10 they contend articles III, IV, V, VI, and VII of The Fourth to Eighth Class County Assessment Law violate the equal protection clause for the reason the county, in conjunction with Cole, "is permitted to act as prosecutor, judge and jury in the appeal procedure." This rather ominous statement, while colorful, does not accord with the assessment law which provides for the appointment of the board of assessment appeals, its duties, the appointment of the chief county assessor by the board and his duties: Sections 301, 302, 401 and 403. The board, although appointed by the county commissioners, functions as an independent body, both administrative and quasi-judicial. The members are public officers. As a board, its actions are entitled to the presumption of legality and validity. Notwithstanding these provisions, we are asked to invalidate a major portion of The Fourth to Eighth Class County Assessment Law because a property owner must appeal from an "assessment established and directed" by the county, which then appoints a board "both responsible to" the county by appointment and in hearing and rendering decisions on appeal from the assessment.

As stated in Allegheny County, Southern District, Tax Assessment Appeals, 7 Comm. Ct. 291, 307, in which the same contention was urged:

"In effect, this argument requests that we hold, prior to any hearing by the Board, that the Board, as a matter of law, is a biased tribunal. Plaintiffs have not furnished the Court with any authority, and we are certain that there is none, which would warrant our holding, in vacuo, that a tribunal designated by statute

to hear an appeal is disqualified, because of bias, from performing its statutory function."

While this argument may have been addressed, but was not, to the lack of an adequate statutory remedy, it is certainly not of constitutional dimension, particularly when the requisite of due process by appeal to the common pleas court and to the appellate courts of this Commonwealth is afforded.

Paragraphs 12 and 13, as amended, again assail the assessment laws as violative of the equal protection clause. It is contended in paragraph 12 that section 104 of the Act of May 21, 1943, which permits a predetermined ratio of assessment to market value in cities within the county and which ratio may differ from that used county wide and in school districts, other than cities, produces varying amounts to educate children within the class herein and thus discriminates against "certain districts." In paragraph 13 it is contended the assessment laws are discriminatory because the revenue produced by taxes based on assessments in various classes of municipalities is unequal and therefore results in inequality between districts in the quality and quantity of municipal services.

These contentions, while directed at the assessment laws which are part of the taxing system, offer kindred issues, dressed in different raiment, raised on behalf of minority groups in the fields of criminal law and civil rights. We discern here a specific direct attack on the property tax, but which, incidentally, since the assessment machinery is used for other taxes, is directed at the entire tax structure.

The dream of equal rights and nondiscrimination was far more urgent among minority groups which have not enjoyed full equality in many areas until the past several decades. Here, however, we are asked by

a class of persons, the taxpayers, certainly not a minority group by ethnic, religious or racial differences, to invalidate a vital part of the county and Commonwealth public revenue producing tax structure as violative of the equal protection clause. Overlooked, we believe, are the very real problems and, we add, the potential danger of such action in a democratic political system of government such as we enjoy. The carefully devised scheme of government, with State and Federal powers distinguished in the intent and wording of the Federal Constitution and by court interpretations; and the delegation of certain State powers to political subdivisions is, when plaintiff's position is plumbed, endangered. Since the attack here is directed to the statewide scheme of taxation, the alternative, at least as far as the property tax is concerned, would be a State or Federal administered system. This would offend the principles of federalism and the autonomy of State and of local political subdivisions, which have served us so well.

We are not only concerned with the assessment system in Cambria County, but, in exploring the ramifications of plaintiff's theory, if successful, we see a radical change in the governmental concept under which we live. For instance, the effort to achieve statewide equality (and, we are not talking about uniformity as heretofore in taxes, or even a national equality, which would seem to be the next step) would, in our view, ultimately spawn more inequality because of population density and differences in urban and rural areas, social and governmental services, location of industry and many other factors.

Fortunately, however, the statewide scheme of taxation with the visceral issue of inequality in the education field has been recently thoroughly examined by the Supreme Court of the United States in San

Antonio Independent School District v. Rodriguez, — U.S. —, 93 S. Ct. 1278. The lessons of that case are, in our analysis, applicable not only to education but to all public services referred to by plaintiffs.

In Rodriguez, which involved the inequality of finances for educational purposes as between school districts, based on the property tax and supplemental aid, the focus was on "poor persons," those with limited income and those whose income may not have been limited, but who lived within a "poor district." In passing on the issue, the United States Supreme Court emphasized "Education, of course, is not among the rights afforded explicit protection under our Federal Constitution": Page 1297, supra. It was recognized in that case, as we do here, that the inequalities alleged as the reason for the attack were nothing less than "a direct attack on the way in which Texas has chosen to raise and disburse state and local revenues": Page 1300. The court concluded the raising of taxes under a statewide scheme, and this would include the system of assessment, has been "traditionally deferred to state legislatures": Page 1300.

The court stated at pages 1307 and 1308:

"[A]ny scheme of local taxation—indeed the very existence of identifiable local governmental units—requires the establishment of jurisdictional boundaries that are inevitably arbitrary. It is equally inevitable that some localities are going to be blessed with more taxable assets than others . . .

"Moreover, if local taxation for local expenditure is an unconstitutional method of providing for education then it may be an equally impermissible means of providing other necessary services customarily financed largely from local property taxes, including local police and fire protection, public health and hospitals, and public utility facilities of various kinds.

We perceive no justification for such a severe denigration of local property taxation and control as would follow from appellees' contentions. It has simply never been within the constitutional prerogative of this Court to nullify statewide measures for financing public services merely because the burdens or benefits thereof fall unevenly depending upon the relative wealth of the political subdivisions in which citizens live."

It therefore concluded a statewide scheme which rationally furthers a legitimate state purpose or interest, fulfills the mandate of the equal protection clause.

We have concluded above, the statewide scheme of assessment which provides valuations upon which taxes are apportioned is for a legitimate state purpose and does not offend the uniformity clause. We now conclude, in accord with Rodriguez, it does not offend the equal protection clause of the Federal Constitution.

Nowhere in the complaint do plaintiffs aver a lack of an adequate statutory remedy. However, implicit in the averments of the complaint on the appeals procedure (paragraph 10) and the improper methods of appraisal and assessments (paragraph 8) is the argument that the statutory appeals procedure is inadequate.

We have concluded plaintiffs have failed to present a substantial constitutional issue. It has been stated time and again by our appellate courts and by this court in Hartnett, supra, that to invoke equity jurisdiction there must exist a substantial question of constitutionality, not merely an allegation thereof, and also the absence of an adequate statutory remedy: Rochester & Pittsburgh Coal Company v. Indiana County Board of Assessment and Revision of Taxes,

438 Pa. 506; Allegheny County, Southern District, Tax Assessment Appeals, supra. Crosson v. Downingtown Area School District, 440 Pa. 468, holds that even the presence of a substantial question of constitutionality in a tax matter does not justify equity taking jurisdiction over every collateral and nonconstitutional attack on the assessment. See also Campbell v. Coatesville Area School District, 440 Pa. 496, 500.

The Fourth to Eighth Class County Assessment Law provides in sections 701, 702, 704, and 705, for statutory appeals to the board, the common pleas court and to the appellate courts. In view of plaintiffs' allegations in paragraphs 8 and 10 of the complaint, is this statutory appeals route adequate? We conclude it is.

To preface our discussion, we call attention to the provision which requires the chief county assessor to "assess, rate and value all subjects and objects of local taxation": Act of May 21, 1943, as amended, section 602. The board of assessment appeals, which appoints the chief county assessor, provides the rules and regulations governing that official, and examines and may revise the assessments: Act of May 21, 1943, as amended, section 302. Parenthetically, we observe the board of assessment appeals has not, for some inexplicable reason, been named as a defendant in this action.

We have discussed above, in disposing of the contitutional question presented by paragraph 10 of the complaint, the broad attack on the integrity of the board. We will not reiterate here, other than to say the statutory appeals procedure provides adequate safeguards of due process if there are real or imagined transgressions of the board's duties and obligations.

Speaking of the averments of paragraph 8, i.e., the appraisal methods were improper, we conclude if so, each plaintiff has a statutory remedy of appeal to

reveal this and relief will be granted if his position is sustained. The chief county assessor fixes the assessment according to the actual value which means the market value of the property: Berger, et al. v. County of Dauphin, 94 Dauph. 33 (1971). The validity of this assessment, which is questioned by appeal, depends upon its appraisal. The appraisal ultimately which results in the assessment is the responsibility of the chief county assessor and the board of assessment appeals. They may accept the appraisals of Cole, and/or as provided by law, consider data and information provided by local assessors: Act of May 21, 1943, sec. 506. The board may revise the assessment fixed by the chief county assessor: Section 302-6. Thus, there is a composite of action which controls the fixing of the assessment which ultimately results in an appraisal of fair market value.

As we view it, stripped of the veneer of a class action and the vague allegations of unconstitutionality, this action is focused on "over assessment or inadequate exemption." Specifically, the nonconstitutional ground alleged in paragraph 8 relates to the mechanics of the assessment system and tax calculation. It calls into question the validity of the assessment. As stated in Allegheny County, Southern District, Tax Assessment Appeals, 7 Comm. Ct. 291, supra, at page 302:

"And because it is the amount of the property owner's assessment which is the basic issue, the Board ought to be permitted to pass upon the assessment in the first instance. It certainly cannot be stated as a foregone conclusion that the decision of the Board on appeal will be unacceptable to every appellant.

"Following the statutory remedy in the event of an appeal to the Court of Common Pleas, that Court would have before it the findings of the defendant Board and such additional evidence as may be offered.

The Court could thus more efficiently pass upon the merits of the question here raised, namely, the constitutionality of the challenged assessment procedure. Indeed, as the Supreme Court said in Rochester, supra, footnote 1 at pages 508-509:

" ' "Expertise in this field lies in the administrative bodies, and we should be slow, as far as jurisdiction is concerned, to favor equity courts over them.

" ' "As we also stated in Y.M.C.A. (420 Pa. 595), '[t]he efficacy of the rule that a statutory remedy must be pursued, if one exists, in preference to any other proceeding is hardly questionable; its application to a tax assessment proceeding whereby those most familiar with the intricacies of tax assessments are able to review the controversy thoroughly is unquestionable.'

" ' "It should also be noted that the long series of real estate tax cases beginning with Morris v. Board of Property Assessment, 417 Pa. 192, 209 A. 2d 407 (1965), and continuing through H. J. Heinz Company v. Board of Property Assessment, 417 Pa. 259, 209 A. 2d 418 (1965), all came through the administrative process, and in that way it was possible to develop and resolve all the problems, including difficult constitutional ones, that were present in those cases. None of those cases have produced the problems that resulted from the equity decrees in Abbott Dairies and Bell Telephone Company." ' "

Assuming arguendo the assessment methods were improper, the core question then is the validity of the assessment, i.e., its relation to market value. The ultimate issue is, was it too high? This is reviewable by the board and on appeal to the common pleas and appellate courts if the property owner is still dissatisfied. The class action, which is a procedural device, does not change this or require that equity

take jurisdiction. Each member of the class has an individual common interest which is substantive. If his substantive right can be adjudicated by the statutory method of appeal, that he is a member of a class does not give him wider jurisdictional relief than he is entitled to as an individual.

We perceive another reason why the statutory remedy ought to be followed. It not only gives the property owner a right to attack an invalid assessment, but also the taxing authority an opportunity to defend the assessment's validity. This goes to the question of appraisal and assessment. If improper, as alleged, tribunals to determine this in the overview of fair market values are provided by the appeals procedure. To grant plaintiffs' prayer that the county wide assessments for 1973 be declared invalid would be unfair to the taxing authorities and to the public whose services depend on the revenue derived, particularly in cases where the assessments were valid. To afford such broad relief to a class when the individual members of the class have recourse to an adequate remedy would be unreasonable, grossly unfair, and result in financial chaos.

As noted in Rochester & Pittsburgh Coal Co. v. Indiana County Board of Assessment and Revision of Taxes, supra, even constitutional questions may be resolved "through the administrative process." Thus, our decision, while passing on the constitutional questions herein raised, would not preclude a raising by the statutory appeals process of any such question which has merit.

We do not discuss in detail defendants' objections to the specificity of the pleadings. However, our discussion above has touched on this. First, it is our conclusion the board of assessment appeals should have been a party to the action; and second, the prolix,

vague and conclusionary averments of paragraphs 7-13 make precise answers most difficult, if not impossible. Since we shall sustain the preliminary objections on the broader grounds, it will not be necessary to detail the insufficiency of specific averments.

We conclude the complaint has failed to raise a substantial constitutional question or nonconstitutional grounds which would warrant the intervention of equity, and that an adequate statutory remedy was available to plaintiffs.

## ORDER

Now, August 7, 1973, after argument and upon consideration of the record and briefs, defendants' preliminary objections are sustained and the complaint dismissed.